

**U.S. BANKRUPTCY COURT**

**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**

**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 18, 2015**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 7 |
| TONYA G. GARNER, | § | |
| | § | CASE NO. 13-44563-DML |
| DEBTOR. | § | |
| YUFENG CAO, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | ADVERSARY CASE NO. 15-4019 |
| | § | |
| TONYA G. GARNER, | § | |
| | § | |
| DEFENDANT. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is the *Motion to Dismiss Pursuant to Rule 12(b)(6), or in the Alternative,*

*Motion to Dismiss Due to Time Bar* (the "Motion") filed by Tonya G. Garner (the "Defendant")

on April 16, 2015.[1] Yufeng Cao ("Plaintiff") filed his *Objection to the Defendant's Motion to Dismiss Pursuant to Family Code Title 2 and Pursuant to the Rule of Timely Filing* (the "Response") on May 11, 2015.[2] The court held a hearing on the Motion on May 14, 2015 (the "Hearing") and took the Motion under advisement.

For the reasons stated below, the court grants the Motion. The court exercises core jurisdiction over the Motion pursuant to the United States Code, title 28, sections 1334 and 157(b)(2)(I). This memorandum opinion constitutes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052.

## I.      Background

Plaintiff initiated the Adversary by filing his *Objection to the Discharge of a Particular Debt* (the "Complaint")[3] on March 16, 2015. The parties have pleaded the following undisputed facts.

Defendant filed a petition under chapter thirteen of the Code[4] in this court on October 1, 2013.[5] On September 27, 2014, Defendant's son, along with two other children from another family in the Defendant's neighborhood, threw rocks at Plaintiff's van, thereby breaking a window on the van.[6] On September 27, 2014, Defendant's son was at least ten years of age but under

---

[1]    Adv. Doc. No. 5. "Adv. Doc. No." refers to the documents filed in the above-captioned adversary case (the "Adversary").
[2]    Adv. Doc. No. 8.
[3]    Adv. Doc. No. 1.
[4]    11 U.S.C. §§ 101 *et seq.*
[5]    Bankr. Doc. 1. "Bankr. Doc. No." refers to the documents filed in the above-captioned bankruptcy case (the "Bankruptcy").
[6]    Complaint at p. 3.

eighteen years of age.[7] The total cost for repairing the damage to the van was $1,153.89.[8] Plaintiff reached a settlement with the children's two families to split the repair costs, leaving Defendant responsible for $576.95 in repair fees (the "Repair Damages").[9] Defendant never paid her portion of the damages, so Plaintiff brought suit in the Justice Court, Precinct 2, Place 1, Johnson County, Texas on November 4, 2014.[10] Plaintiff there sought relief in the form of the Repair Damages, as well as $30 in repair-related travel expenses and $126.00 in court fees (the "Small Claims Damages").[11]

Defendant voluntarily converted the Bankruptcy to a proceeding under chapter seven of the Code on November 24, 2014.[12] On January 5, 2015, Defendant updated her schedules to include Plaintiff's claim, listing it as contingent and unliquidated.[13] On January 8, 2015, Defendant filed a certificate of service indicating that she had provided notice of the Bankruptcy and first meeting of creditors to Plaintiff.[14] The trustee assigned to the Bankruptcy (the "Trustee") held a first meeting of creditors pursuant to Code section 341 on January 12, 2015.[15]

The court issued an order (the "Deadline Order") that set the deadline for challenges to dischargeability of debts for sixty days later, on March 13, 2015.[16] More particularly, the Deadline Order was accompanied by its *Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, &*

---

[7] Response at p. 2.
[8] Complaint at p. 3.
[9] *Id.*
[10] *Id.* at 4. The case number for that action was SC140074.
[11] Complaint at 4.
[12] Bankr. Doc. No. 40. The court entered an order converting the case pursuant to Code section 1307(a) on December 3, 2014. Bankr. Doc. No. 41.
[13] Bankr. Doc. No. 47, p. 3.
[14] Bankr. Doc. No. 52.
[15] *See id.* and Bankruptcy Docket entry of January 13, 2015 reflecting the Trustee's Report of No Distribution.
[16] Bankr. Doc. No. 41. The sixty-day deadline is determined by FED. R. BANKR. P. 4007(c).

*Deadlines* (the "Deadline Notice").[17] In a subsection labeled "Deadlines," the Deadline Notice states that "Papers must be *received* by the bankruptcy clerk's office by the following deadlines: *Deadline to Object to Debtor's Discharge or to Challenge Dischargeability of Certain Debts: 3/13/15.*"[18]

Representing himself, Plaintiff mailed the Complaint via certified first class mail on March 5, 2015. Plaintiff made inquiries at the post office and received assurances that mail of this class from Plaintiff's post office to the destination zip code would normally arrive in two to three days, well within the March 13 deadline to object to discharge. However, the United States Postal Service unexpectedly delayed delivery for ten days and the Complaint finally arrived at the courthouse on March 16, 2015, three days after the deadline to object to discharge, at which time it was promptly filed in the Adversary docket.

In the Complaint, Plaintiff requested the court determine his claim to be excepted from discharge under Code section 523(a)(6). Plaintiff seeks $1,112.95, composed of the Small Claims Damages, court costs for filing the Adversary, and other expenses (the "Adversary Damages").[19] In the Response, Plaintiff elaborated on the basis for his request for relief, arguing that Texas Family Code Section 41.001 assigns liability to Defendant for her child's actions.[20]

By the Motion, Defendant argues that Plaintiff's claim was not filed timely before the deadline to file complaints to determine dischargeability of debts and that it should therefore be dismissed.

---

[17]   Bankr. Doc. No. 41-1.
[18]   *Id.* (emphasis in original).
[19]   Complaint at 3.
[20]   Response at 2.

## II.      Discussion

The Motion and the Response raise two issues. First, whether the date a party mails a document via the United States Postal Service is the date on which the document should be deemed to be filed. Second, whether bankruptcy law provides for the requested relief.

The Motion requests the court dismiss the Complaint for failure to state a claim upon which relief can be granted.[21] The moving party has the burden of showing that no relief may be granted on the claim as stated.[22] A motion to dismiss may be granted because a legal remedy based on the alleged facts does not exist or because the facts as alleged, even if true, do not satisfy the legal requirement of the pleaded cause of action.[23]

Time limits established in Rule 4007 do not implicate subject matter jurisdiction.[24] Rather, the time limits in the Bankruptcy Rules are intended for the debtor to use as affirmative defenses.[25] A motion to dismiss under Rule 7012 is a proper mechanism to assert that a complaint to determine dischargeability is time-barred.[26]

"It is well-settled that where a Rule 12(b)(6)  motion to dismiss is supported by materials outside the pleadings, the Court may, in its complete discretion, accept the materials and convert the motion into a motion for summary judgment under Rule [7056], or reject or ignore the

---

[21]   FED. R. CIV. P. 12(b)(6), made applicable to bankruptcy courts by Rule 7012. "Rule" or "Bankruptcy Rule" herein refers to the correspondingly numbered Federal Rule of Bankruptcy Procedure.

[22]   *Fla. Claims Consultants v. Wood (In re Wood)*, Bankr. Case no. 05-47496, Adv. Case no. 09-4025, 2009 WL 1857409 at *2 (Bankr. N.D. Tex. June 29, 2009).

[23]   *Id.*

[24]   *See Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) (interpreting similar language in Bankruptcy Rule 4004).

[25]   *Id.*

[26]   *Wood*, 2009 WL 1857409 at *2 (citing *Casciato-Northrup v. Phillips (In re Phillips)*, 233 B.R. 712, 713 n. 2 (Bankr. W.D. Tex. 1999) (explaining that case law supports the position that timeliness is an essential prerequisite for dischargeability actions and further providing that, to extent necessary, the motion to dismiss would be treated as a motion for summary judgment on stipulated facts)).

materials."[27] As there are no disputed issues of fact in this case, the court finds that the Hearing afforded ample opportunity to both parties to present evidence, most pertinently as to the circumstances of the mailing of the Complaint. To the extent necessary, the court will treat the Motion as a motion for summary judgment on stipulated facts.[28]

Dismissal for failure to state a claim "is viewed with disfavor and is rarely granted."[29] The court takes all factual allegations in the complaint as true and construes liberally in favor of the plaintiff.[30] The court evaluates pleadings drafted by pro se litigants using less stringent standards than formal pleadings drafted by lawyers.[31]

### A. Was Plaintiff's Complaint Timely Filed?

#### 1. The "Mailbox Rule"

The "Mailbox Rule" is a generic term that describes various rules concerning the date and time that a legal document becomes effective or is considered to be filed with the court when the document is placed in the mail for delivery. At common law, courts developed detailed rules for determining when contractual acceptance was effective if mailed.[32] In general, an acceptance of an offer was effective and formed the mutual assent necessary to form a contract at the moment a party placed the acceptance in the mail.[33]

---

[27]  *Nelson v. Sherron Assocs., Inc.*, Case no. 3:14-CV-3781-B, 2015 WL 3504924 at *3 (N.D. Tex. June 3, 2015) (slip op.) (citing *Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 193 n. 3 (5th Cir. 1988)).

[28]  *See Wood*, 2009 WL 1857409 at *2

[29]  *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

[30]  *Id.*

[31]  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[32]  *See* RESTATEMENT (SECOND) OF CONTRACTS, § 63 (1981) ("an acceptance . . . is operative . . . as soon as put out of the offeree's possession, without regard to whether it ever reaches the offeror . . . ."). *See also id.* at comment (b) (providing numerous illustrations of how courts dealt with acceptances that were lost in the mail). This section of the Restatement also contains a lengthy list of cases developing and interpreting the common law rules.

[33]  *See id.*

Many government agencies, legislatures and courts have codified these common law doctrines, applying them to court filings.[34] These rules provide that court filings are deemed timely if they are placed in the mail on or before the deadline to file, even if the court receives them after the deadline to file has passed.[35] These mailbox rules are particularly well-developed in the special context of prisoners' pro se criminal court filings and their delivery through prison mailing systems.[36] The Supreme Court has noted, however, that individuals outside of have a variety of options to ensure timely delivery of their court documents, even when using the mail.[37]

Bankruptcy courts operate under the Federal Rules of Bankruptcy Procedure, which adopt the rules contained in the Federal Rules of Civil Procedure pertaining both to service and to

---

[34] See, e.g., TEX. R. CIV. P. 5 ("If any document is sent to the proper clerk by first-class United States mail in an envelope or wrapper properly addressed and stamped and is deposited in the mail on or before the last day for filing same, the same, if received by the clerk not more than ten days tardily, shall be filed by the clerk and be deemed filed in time."); 26 U.S.C. § 7502(a) ("the date of the United States postmark stamped on the cover in which [a federal tax filing] is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be."); U.S. SUP. CT. R. 29.2 ("A document is timely filed if it is . . . sent to the Clerk through the United States Postal Service by first-class mail (including express or priority mail), postage prepaid, and bears a postmark, other than a commercial postage meter label, showing that the document was mailed on or before the last day for filing; or if it is delivered on or before the last day for filing to a third-party commercial carrier for delivery to the Clerk within 3 calendar days.").

[35] See, e.g., TEX. R. CIV. P. 5.

[36] See, e.g. FED. R. APP. P. 4(C)(1), TEX. CIV. PRAC. & REM CODE § 14.005(b); Houston v. Lack, 487 U.S. 266 (1988) (holding that a prisoner's habeas corpus petition is considered filed when the prisoner delivers the petition to prison authorities to be sent to the court).

[37] The Court said:

> [Litigants outside of prison] can take [steps] to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30-day deadline. [These litigants can] personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. [They] may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers . . . . And if [they] do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it.

Houston, 487 U.S. at 270-71.

filing.[38] *Compare* Fᴇᴅ. R. Cɪᴠ. P. 5(b)(2)(C) ("A paper is served under this rule by mailing it to the person's last known address—in which event service is complete upon mailing") *with* Fᴇᴅ. R. Cɪᴠ. P. 5(d)(2) ("A paper is filed by delivering it to the clerk..."). These rules demonstrate that the distinction between service of a document and filing of a document for mailbox rule purposes is important. In this case, it is the filing, and not the service, of the Complaint that is at issue.[39] While the Federal Rules of Civil Procedure, and thus, the Bankruptcy Rules, contain a mailbox rule for service, no such mailbox rule is explicitly stated regarding filings. *See* Fᴇᴅ. R. Cɪᴠ. P. 5.

The time at which the Complaint is determined to have been filed, whether upon mailing or upon receipt by the court, is dispositive in this case. The question is, therefore, can the word "delivering" in the rule language "[a] paper is filed by delivering it to the clerk..."[40] be construed as Plaintiff argues, by delivering the Complaint to the United States Postal Service for subsequent delivery to the court, or must the court's clerk have the Complaint actually in its possession by the deadline?

The Fifth Circuit has long held that "compliance with a filing requirement is not satisfied by mailing the necessary papers within the allotted time. The papers must be filed by the clerk within the filing period specified in the applicable rule or order." *Lee v. Dallas Cty. Bd. Of Ed.*, 578 F.2d 1177, 1178 n. 1 (5th Cir. 1978).[41] Even if a party deposits a filing with the postal service

---

[38]    Bankruptcy Rule 7005 (adopting Federal Rule of Civil Procedure 5 in adversary proceedings).
[39]    *See* Rule 4007(c).
[40]    Fᴇᴅ. R. Cɪᴠ. P. 5(d)(2).
[41]    *See also United States v. Doyle*, 854 F.2d 771, 773 (5th Cir. 1988) (noting that the presence of a mailbox rule for service but the absence of one for filing indicates that only physical delivery will suffice); *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 78 (2d Cir. 2003) (citing *Doyle* and collecting cases from numerous other circuit courts of appeal); *Eubank v. Strickland (In re Strickland)*, 50 B.R. 16 (Bankr. M.D. Ala. 1985); *State Wide Collection Corp. v. Zorie*, 2 B.R. 148 (Bankr. S.D. Fla. 1980).

for delivery prior to the deadline, if the clerk does not receive the filing before the deadline passes, the filing is not timely and dismissal is appropriate.[42]

The court therefore finds that the Complaint was not filed timely.

### 2. *Equitable Tolling*

The time limit to file complaints to determine dischargeability of debts is strictly construed.[43] Rules 9006(b) and 4007(c) do not provide bankruptcy courts the ability to extend the deadline to file dischargeability complaints except under narrow circumstances not applicable here. The court has no discretion to extend the deadline after it expires, even for excusable neglect,[44] including unreasonable and unexpected postal delays.[45] Other litigants, when faced with the situation in which Plaintiff now finds himself, have unsuccessfully moved courts to consider their late-filed complaints as equitable requests to toll the deadline, arguing, as Plaintiff has here, that the postal service normally delivered letters sent from a similar distance in a certain number of days and that the filing was late only because of extraordinary circumstances beyond the litigants' control.[46] Courts are not unanimous in rejecting postal service-related equitable tolling,[47] but the cases in which courts grant equitable tolling are either heavily criticized or are otherwise

---

[42]   *Doyle*, 854 F.2d at 773.

[43]   *Canganelli v. Lake Cty. Ind. Dept. of Public Welfare (In re Canganelli)*, 132 B.R. 369, 383 (Bankr. N.D. Ind. 1991) (collecting cases).

[44]   *See* Rules 9006(b)(3) & 4007(c) (indicating that the Rules' general provisions for enlarging time do not apply to complaints filed under Rule 4007 and providing, instead, that such time enlargement requests must be filed prior to the deadline established by the court).

[45]   *In re Tucker*, 263 B.R. 632, 636 (Bankr. M.D. Fla. 2001).

[46]   *See, e.g., Ohio Farmers Ins. Co. v. Leet (In re Leet)*, 274 B.R. 695 (6th Cir. B.A.P. 2002) (citing *Taylor*, 503 U.S. 638 (1992) to reverse lower court's equitable tolling of deadline when mailed complaint received one day after deadline); *Eckel Indus., Inc. v. Collins (In re Collins)*, 173 B.R. 251 (Bankr. D.N.H. 1994); *Garza v. Remund (In re Remund)*, 109 B.R. 492 (Bankr. M.D. Fla. 1990).

[47]   *See, e.g., First Bank Sys. N.A. v. Begue*, 176 B.R. 801 (Bankr. N.D. Ohio 1995) (equitably tolling deadline when mailed complaint received one day after the deadline).

unpersuasive.[48] The strict construction of the deadline protects the debtor's fresh start and ensures the prompt administration of the case.[49]

The Adversary presents perhaps the best set of facts ever likely to occur in favor of equitable tolling. Plaintiff, acting pro se, diligently mailed the Complaint eight days prior to the deadline for delivery to the clerk's office no more than 20 miles away, and yet the mail was not delivered for eleven days. Unfortunately for Plaintiff, the Supreme Court has made it clear that Congress placed the burden on plaintiffs to file timely.[50] The court declines to toll the deadline for Plaintiff to file a complaint to determine dischargeability of Defendant's debt.

Even if, however, the time for filing the Complaint were tolled, the court would have to dismiss Plaintiff's claims for failure to state a claim upon which relief could be granted.

### B. Vicarious Liability

The Complaint seeks a determination of dischargeability of Defendant's debt under Code section 523(a)(6), which excepts from discharge any debt "for willful and malicious injury *by the debtor* to another entity or to the property of another entity" (emphasis added). Plaintiff argues that Texas Family Code section 41.001 imputes liability to Defendant for her minor son's actions.[51]

---

[48] *See, e.g., Leet*, 274 B.R. at 699 (noting that *Begue* failed to analyze prior Supreme Court precedent and instead appeared to have muddled proper application of the Rule 4007 deadlines with a criticism of labeling such deadlines as jurisdictional). Other cases granting equitable tolling are too old and too brief to be persuasive, *e.g. Sellers Inv. Co. v. Verzi (In re Verzi)*, 10 B.R. 99 (Bankr. S.D. Fla. 1981), or deal with court errors that led to late filing, *e.g., Eur. Am. Bank v. Benedict (In re Benedict)*, 90 F.3d 50 (2d Cir. 1996).

[49] *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644 (1992) ("Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality.").

[50] *Id*.

[51] "A parent or other person who has the duty of control and reasonable discipline of a child is liable for any property damage proximately caused by: (1) the negligent conduct of the child is the conduct is reasonably attributable to the negligent failure of the parent or other person to exercise that duty; or (2) the willful and malicious conduct of a child who is at least 10 years of age but under 18 years of age." TEX. FAM. CODE § 41.001.

More specifically, the Complaint alleges that Defendant owes the Adversary Damages because her minor son intentionally and maliciously caused damage to Plaintiff's vehicle.

The court must interpret a statute according to its plain meaning. *United States v. Ron Pair Enters.,* 489 U.S. 235, 241 (1989). "Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning." *Boyce v. Greenway (In re Greenway)*, 71 F.3d 1177, 1179 (5th Cir. 1996). Exceptions to discharge must be narrowly construed in the pursuit of a fresh start for the debtor. *Miller v. J.D. Abrams Inc.* (*In re Miller*), 156 F.3d 598, 602 (5th Cir. 1998).[52]

Faced with interpreting Code section 523(a)(6) as it applies to debts for which the debtor is only vicariously liable, bankruptcy courts have generally held that imputed liability is insufficient to except a debt from dischargeability.[53] Courts have also noted that the predecessor statute to section 523(a)(6)[54] contained no similar restriction to acts "by the debtor," leading courts to the conclusion that the statutory modification was deliberate and designed to give relief to debtors from imputed and vicarious liability.[55] The Plaintiff's allegations of Defendant's vicarious liability do not state a claim for which the court can grant relief.

Furthermore, section 523(a)(6) only excepts debts stemming from "willful and malicious injury" caused by debtor. An injury is willful and malicious where there is either an objective

---

[52]   *See also Columbia Farms Distr., Inc. v. Maltais (In re Maltais)*, 202 B.R. 807, 811 (Bankr. D. Mass. 1996) (citing *Century 21 Balfour Real Estate v. Menna (In re Menna)*, 16 F.3d 7, 9 (1st Cir. 1994)).

[53]   *See First N.M. Bank v. Bruton (In re Bruton)*, Bankr. Case no. 7-09-13458JA, Adv. Case no. 09-1187J, 2010 WL 2737201 (Bankr. D.N.M. July 12, 2010) (debtor wife may discharge debt for fraud claims against husband); *Hamilton v. Nolan (In re Nolan)*, 220 B.R. 727 (Bankr. D.D.C. 1998) (co-owner debtor of beauty salon may discharge debt for other co-owner's discriminatory termination of former employee); *Davis v. Melcher (In re Melcher)*, 319 B.R. 761 (Bankr. D.D.C. 2004) (debtor-principals may discharge debt for injuries caused by their agents); *Jones v. Whitacre (In re Whitacre)*, 93 B.R. 584 (Bankr. N.D. Ohio 1988) (debtor parents may discharge debt related to their children's undisclosed tortious act); *Deroche v. Miller (In re Miller)*, 196 B.R. 334 (Bankr. E.D. La. 1996) (parents may discharge their debt for child's intentional shooting of another).

[54]   Bankruptcy Act § 17(a)(8) (1898).

[55]   *See, e.g., Bowse v. Cornell (In re Cornell)*, 42 B.R. 860 (Bankr. E.D. Wash. 1984); *Nolan*, 220 B.R. at 732; *Whitacre*, 93 B.R. at 586.

substantial certainty of harm or a subjective motive to cause harm. *Husky Int'l Electronics, Inc. v. Ritz (In re Ritz)*, ___ F.3d ___, Case no. 14-20526, 2015 WL 3372812 at *6 (5th Cir. May 22, 2015). "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at *6 (quoting *Kawaauhau v. Gaiger*, 523 U.S. 57, 61 (1998)).

The Texas statute Plaintiff cites does not specify any state of mind required on the part of the parent.[56] In particular, it does not include the Code's requirement of the mental state of "willful and malicious" injury, which is accompanied by a high burden of proof.[57] Plaintiff alleges that Defendant "is vicariously responsible for her son's willful and malicious injury" without alleging any mental state on the part of the Defendant.[58] The Plaintiff has not alleged that Defendant acted willfully or maliciously with respect to the actions her child took.[59]

Viewing the facts alleged in the Complaint in a light most favorable to Plaintiff, this court finds that Plaintiff has failed to state a claim that identifies a debt which can be excepted from discharge under Code section 523(a)(6).

### III. Conclusion

For the reasons set forth above, this court orders that Defendant Tonya Garner's *Motion to Dismiss Pursuant to Rule 12(b)(6), or in the Alternative, Motion to Dismiss Due to Time Bar* is GRANTED.

### ### END OF MEMORANDUM OPINION AND ORDER ###

---

[56] *See* TEX. FAM. CODE § 41.001. Given that the statute assigns "the duty of control and reasonable discipline of a child," the mental state required appears to be mere negligence. *See id.*

[57] *See* Code section 523(a)(6). For a thorough discussion of the "willful and malicious" standard in the Fifth Circuit, see *Miller*, 156 F.3d 598.

[58] Complaint at 2.

[59] *See, e.g.,* *Whitacre*, 93 B.R. at 585-86 ("There is no such allegation [of willful or malicious injury] in the Plaintiff's Complaint . . . It is doubtful that any statement of the [debtor-parent's vicarious liability for child's intentional tort] claim made here would be sufficient to show that Plaintiff is entitled to the relief sought.").